IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ISPINE, PLLC,
   *Plaintiff*,

v.

ALLSTATE PROPERTY AND
CASUALTY INSURANCE
COMPANY,
   *Defendant*.

Civil Action No. ELH-20-145

**MEMORANDUM**

This Memorandum resolves a motion filed by Allstate Property and Casualty Insurance Company ("Allstate") under Fed. R. Civ. P. 45, to compel Anwar Malik, a clinical neurophysiologist, and his company, Delta Neurodiagnostics, Inc. ("Delta"), to comply with Allstate's discovery subpoenas. ECF 1 (the "Motion"). Allstate also seeks costs and expenses incurred in connection with attempting to secure compliance with its subpoenas. *Id.* at 8-9. Along with the Motion, Allstate has submitted numerous exhibits. ECF 1-2 to ECF 1-12. It has also submitted a certificate pursuant to Local Rule 104.7, detailing its efforts to obtain compliance with its subpoenas. ECF 2. The certificate is supported by several exhibits. ECF 2-2 to ECF 2-6.

The discovery pertains to a suit pending in the Eastern District of Michigan, filed by ISpine, PLLC ("ISpine") against Allstate. In that case, ISpine seeks payment of approximately $98,000 for services rendered to a patient, B.S.[1] Although not clear from the Motion, it appears that the patient was insured by Allstate, and that the services in issue were rendered on February 28, 2019.

---

[1] I shall use the patient's initials to protect his privacy.

ECF 1 at 2. Allstate contends the procedure was medically unnecessary. Malik and Delta are not parties to the litigation in Michigan. ECF 1-12.

Allstate served a version of the Motion on Malik and Delta on December 18, 2019. ECF 1 at 5. A copy of the submission is attached to Allstate's certificate of compliance. ECF 2-2. The Motion now at issue was served on Malik and Delta via email on January 17, 2020, and via UPS on January 20, 2019. ECF 3-2; ECF 3-3. Neither Malik nor Delta has responded, and the time to do so has expired.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion in part and deny it in part.

## I. Factual and Procedural History

On April 26, 2019, ISpine filed suit against Allstate in a Michigan state court, seeking "payment of more than $98,000 relative to a routine outpatient procedure allegedly performed on a patient named [B.S.]. . . ." ECF 1 at 1. Allstate timely removed the case to federal court. *See ISpine, PLLC v. Allstate Property and Casualty Insurance Company*, 19-cv-11458-GAD-App (E.D. Mich.).[2]

According to Allstate, it has filed affirmative defenses in the Michigan case alleging, *inter alia*, that "the procedure" performed by ISpine on B.S. was "medically unnecessary and therefore not compensable pursuant to Michigan's No-Fault Act." ECF 1 at 2. Allstate asserts that, according to ISpine, the "justification for the procedure" on B.S. "would be determined by neurophysiological intraoperative monitoring ('IONM') of [B.S.]." *Id.* Allstate adds: "ISpine's own records admit that the IONM was critical to its determination of medical necessity." *Id.* at 3.

---

[2] The suit was also filed by Surgical Center of Southfield, LLC, d/b/a Fountain View Surgery Center ("Fountain View"). But, Fountain View dismissed its claim against Allstate. ECF 1 at 2 n.1.

2

Malik, "acting through Delta, which he owns," allegedly performed the IONM on B.S. *Id.* at 2. It appears that neuromonitoring is used "to confirm the efficacy of nerve root decompression during surgery . . . ." ECF 1-6 at 7 (explanation of Allstate's counsel).

On August 20, 2019, Allstate served document subpoenas on Malik and Delta at an address in Glenelg, Maryland, where Malik apparently resides. ECF 1-1; ECF 1-2; ECF 1-3; ECF 1-4. The subpoenas set a response deadline of September 3, 2019. ECF 1-2 at 2; ECF 1-4 at 2.

The subpoenas requested production of numerous categories of documents for an extensive period: January 1, 2017 to the present. ECF 1-2 at 6; ECF 1-4 at 8. The subpoenas sought communications between Malik and/or Delta and ISpine and/or Stefan Pribil, M.D., a neurosurgeon who allegedly owns ISpine, concerning the "benefits and/or medical necessity" of IONM; communications regarding B.S.; communications between Malik and/or Delta and Bachu Abraham, M.D., Delta's medical director, concerning IONM (excluding communications concerning patients other than B.S.); contracts between Malik and/or Delta and ISpine; contracts between Malik and/or Delta and Abraham; communications between Malik and ISpine regarding billing practices for IONM; communications between Malik and/or Delta and Abraham regarding billing practices for IONM; bills and invoices submitted by Malik and/or Delta to ISpine; documents pertaining to B.S.; documents submitted to Malik and/or Delta by Fountain View for the purpose of obtaining privileges and/or credentials; communications between Malik and/or Delta and the medical director of Fountain View; documents relating to applicable rules, bylaws, agreements, or protocols set by Fountain View; documents pertaining to billing for services performed on B.S.; communications between Malik and/or Delta and Wesley Blake Barber[3]

---

[3] The Motion does not identify Barber.

relating to services provided to B.S.; and treatment schedules. *See*, *e.g.*, ECF 1-2 at 2, 7-8; ECF 1-4 at 8-10.

Allstate deposed Malik in Maryland on November 19, 2019. ECF 1 at 3; ECF 1-6 at 2. Notably, Allstate had the opportunity to question Malik about topics for which it sought documents, such as medical necessity, billing practices, and the like. Malik testified that he could not recall any specific papers written by the American Medical Association that identified neuromonitoring during spinal surgeries as the standard of care. ECF 1-6 at 5-6. He did not know whose idea it was to use IONM on B.S. *Id.* at 7-9. Nor could he provide details about the use of IONM on B.S. *Id.* at 15-18. Moreover, he did not recall any conversations with anyone at ISpine regarding billing. *Id.* at 13. And, he could not recall details about how the IONM was supervised during surgeries. *Id.* at 16-17. Malik also stated that the image files from the procedure were still available, but that specific equipment would be needed to review the files. *Id.* at 14.

According to Allstate, at Malik's deposition, he acknowledged receipt of the subpoenas and agreed to produce certain documents. ECF 1 at 3, 4. However, this portion of the deposition transcript was not provided to the Court. *See* ECF 1-6 at 14.

In an email to Malik on November 21, 2019, Andrew DeNinno, an attorney for Allstate, confirmed that Malik had agreed at his deposition to produce his curriculum vitae, "screenshots of the readings from the intraoperative monitoring performed" on B.S., and "the electronic file containing the recording of all readings from the intraoperative monitoring performed on" B.S. ECF 1-7 at 4. Malik responded a few hours later, informing DeNinno that he had a family emergency. *Id.* at 3. DeNinno agreed to wait for the documents until December 2, 2019. *Id.* He also reminded Malik of the need to respond to the subpoenas served on him and Delta. *Id.*

On November 24, 2019, Malik sent an email to DeNinno, stating that he was attaching documents regarding ISpine and Dr. Pribil's surgery of "the mentioned patient." *Id.* at 3. But, he noted that he could not recall any other communications as to "the care of" B.S. *Id.*

DeNinno sent Malik an email on November 25, 2019, informing him that his "response to Allstate's subpoena is incomplete." ECF 1-7 at 2. He listed categories of documents that had not been produced, including, *inter alia*, communications regarding the medical necessity of IONM, written agreements and contracts, and communications regarding billing practices. *Id.* DeNinno stated, *id.*:

> Please note that records from email service providers confirm that you regularly received correspondence from ISpine's biller at both your malikmd.billing@gmail.com and summittam@gmail.om addresses. These email addresses were also used for dozens of communications with ISpine representatives. . . . All of these email communications that are responsive to Allstate's subpoena must be produced, in addition to any other responsive materials in your possession, custody, or control.

DeNinno also stated, *id.*:

> As indicated in my previous correspondence, Allstate is willing to forego action to enforce these subpoenas until December 2, 2019, which is nearly three (3) months after the date responses were due. After that date, Allstate will seek Court intervention directing you to produce responsive materials along with reimbursing Allstate's attorney's fees and costs related thereto.

Allstate attached to its Motion a sample of records from Google LLC ("Google"). These records show emails between Malik's two email addresses and email addresses associated with ISpine, between January 2018 and April 2019. ECF 1-8 at 8, 22. The content, however, is not available to Allstate from Google.

Allstate has acknowledged that Malik produced his curriculum vitae and "screenshots" of the IONM performed on B.S. ECF 1 at 4; *see* ECF 1-7 at 3. But, according to Allstate, "As of December 18, 2019, neither Malik nor Delta had served any documents responsive to Allstate's

5

subpoenas, and neither has filed any motions to quash or otherwise contest the propriety of Allstate's subpoenas . . . ." ECF 1 at 3.

Between December 19, 2019, and December 23, 2019, attorneys for Allstate emailed Malik, attempting to schedule a conference call regarding the subpoenas and indicating that Allstate wished to avoid the filing of a motion to compel. ECF 2-3 at 2-4.

On December 19, 2019, Malik responded to one of these emails, stating: "Please advise attorney DeNinno that I will no longer will pursuing [sic] this matter as I don't have the time and resources to deal with this matter. Please remove any of my companies [sic] billed charges for the services rendered in this said case." *Id.* at 4.[4]

Counsel for Allstate spoke by telephone with Malik and his wife on the evening of December 23, 2019. ECF 2 at 1. According to Allstate, during this call, Malik and his wife "disclosed. . . that they had additional documents to produce and agreed that they would re-read Allstate's subpoenas thoroughly to ascertain whether Malik and Delta had more documents to produce." *Id.* at 1-2. Later that evening, Malik forwarded an email with the following subject line: "Revised surgery schedule for February 29". ECF 1-9 at 2.[5] He stated that this email "was the first time [he] was made aware of the proposed surgeries for that day." *Id.*

Allstate sent Malik an email on December 30, 2019, listing categories of documents that he had not yet produced, and offering to extend the response deadline to January 6, 2020. ECF 2 at 2. Malik followed up with another email on December 31, 2019, stating, ECF 1-10 at 2 (emphasis added):

---

[4] There is no indication of the sum that Malik agreed to forfeit. Nor is there any indication as to whether ISpine's suit includes an effort to recover monies that Malik claimed were due for the procedure.

[5] Based on the document, the reference is to 2019.

6

- There has been no communication between Delta Neurodiagnostic and iSpine relating to the medical necessity of intraoperative neuromonitoring. This service is requested by the servicing provider/surgeon.
- There has been no written agreement of any nature between Delta Neurodiagnostic and iSpine ever.
- The contractual agreement between Delta Neurodiagnostic and Bachu Abraham, MD is attached. There has been no communication between Delta Neurodiagnostic and iSpine relating to billing practices for intraoperative neuromonitoring ever.
- There has been no communication between Delta Neurodiagnostic and Bachu Abraham, MD relating to billing practices for intraoperative neuromonitoring ever.
- *Credentialing file will be forwarded via email.*
- There has been no communication (emails or text messages) between Delta Neurodiagnostic and the medical director of Fountain View Surgical Center.
- The only documentation regarding rules, bylaws, and protocols set by Fountain View Surgical Center were presented in an orientation folder at time of orientation. *These documents will be forwarded via email.*

Thank you for allowing me the time to provide you with the requested documentation. As per our conversation earlier, since Delta Neurodiagnostic is an entity completely independent of iSpine and/or Fountain View Surgical Center and provides services at the request of surgical providers, some of the documents requested do not pertain to the involvement of Delta Neurodiagnostic in this matter.

Allstate alleges that it attempted to set up another conference call with Malik for January 15, 2020. ECF 2 at 2. However, Malik did not participate in the call. *Id.*

On that date (January 15, 2020), Jacquelyn McEttrick, an attorney for Allstate, sent an email to Malik, stating that he "did not appear for today's conference (which was set for the day that [he] specifically requested)." ECF 2-6 at 2. Further, she stated: "Allstate has made dozens of attempts to work with you, including numerous late night calls and numerous extensions. Unfortunately, at this point, Allstate will have to proceed with its motion." *Id.* Malik responded: "I apologize but son is sick so dealing with that right now. If you need to file for motion please do so." *Id.* McEttrick answered that Allstate "does not want to file the motion, but we have been trying for months to work with you and you continue to ignore Allstate's subpoena, which is

7

simply not allowed. It is important to adhere to legal process, which isn't happening here despite more than a dozen attempts by Allstate to accommodate you." *Id.*

Allstate maintains that the documents Malik said he would produce in his email of December 31, 2019, have not been produced. ECF 1 at 6. It points out that Malik has produced only "two (2) documents that comprised fifteen (15) total pages and consisted almost entirely of the medical records Delta and ISpine created and submitted to Allstate in connection with their bills." *Id.*

## II. Discussion

Allstate moves to compel Malik and Delta to comply with its subpoenas, pursuant to Fed. R. Civ. P. 26, 34(c), 37(a), and 45(g). ECF 1 at 1. It contends that there is no dispute that Malik and Delta were properly served with the subpoenas, as Malik testified during his deposition that he received the subpoenas and chose not to respond. ECF 1 at 6.[6]

At issue here (ECF 1 at 7-8) are the following document requests, for the period commencing January 1, 2017, to the present. ECF 1-2 at 7-8; ECF 1-4 at 8-10:

1. All written agreements of any nature between you and [ISpine] during any part of the relevant period.

2. All communications between you and [ISpine] and/or Stefan Pribil, M.D. relating to the benefits and/or medical necessity of intraoperative monitoring.

3. All communications between you and the plaintiff during any part of the relevant period relating to services provided to [B.S.]. . . .

\* \* \*

---

[6] Allstate initially "sought an order holding [Malik and Delta] in contempt for ignoring Allstate's subpoenas entirely." ECF 1 at 5 n. 4; ECF 2-2 at 8. However, "Malik and Delta began responding to Allstate after service of the motion [in December 2019], and in an effort to move forward with a focus on the substantive relief sought by Allstate which it requires to defend itself in this action, Allstate has withdrawn the request for an order of contempt from this version filed with the Court." ECF 1 at 5 n.4.

8

7. All communications between you and [ISpine] during any part of the relevant period relating to billing practices used for intraoperative monitoring. . . .

* * *

11. All documents submitted by you to Surgical Center of Southfield, LLC d/b/a Fountain View Surgery Center ("Fountain View") for the purpose of obtaining privileges and/or credentials.

* * *

13. All documents relating to any rules, bylaws, agreements, or protocols set by Fountain View that were applicable to you during any part of the relevant period. . . .

* * *

15. All communications (including emails and text messages) between you and Wesley Blake Barber a.k.a. Blake Barber during any part of the relevant period relating to the services provided to [B.S.] and/or the types of services provided to [B.S.].

Fed. R. Civ. P. 45(d) provides that a party serving a subpoena may move the court where compliance is required for an order compelling production, as Allstate has done in this case. Fed. R. Civ. P. 45(d)(2)(B)(i). But, Fed. R. Civ. P. 45(d) also protects a person or entity subject to a subpoena from undue burden or expense associated with compliance.

A non-party who is served with a subpoena, such as Malik and Delta, may object to the production associated with the subpoena. Fed. R. Civ. P. 45(d)(2)(B). Notably, the objection must be served within 14 days after service of the subpoena, or by the date production is required, whichever is earlier. Rule 45(d)(2)(B). Under Fed. R. Civ. P. 45(d)(2)(B)(ii), if a non-party served with a subpoena objects to the production associated with the subpoena, and the court orders compliance over the objection, the order must "protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." *Id.* In this case, no objection was filed.

Also of relevance, "the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." *Phillips v. Ottey*, No. DKC 14-0980, 2016 WL 6582647, at *2 (D. Md. Nov. 7, 2016) (quoting *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 240–41 (E.D. Va. 2012)) (internal quotation marks omitted); *accord EEOC v. Performance Food Grp., Inc.*, MJG-13-1712, 2017 WL 2461977, at *2 (D. Md. June 7, 2017). Under Rule 26(b)(1), a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1) (emphasis added). Subpoenas that are overbroad and that seek information "'irrelevant to the case' should be considered unduly burdensome." *Bierman Family Farm, LLC v. United Farm Family Ins. Co.*, ADC-17-0004, 2017 WL 3311206, at *3 (D. Md. Aug. 2, 2017) (citation omitted).

In *Maxtena, Inc. v. Marks*, 289 F.R.D. 427 (D. Md. 2012), Judge Chasanow explained, *id.* at 439:

> "Whether a subpoena subjects a witness to undue burden within the meaning of Rule 45[(d)](3)(A)(iv) usually raises a question of the reasonableness of the subpoena," an analysis that requires "weighing a subpoena's benefits and burdens" and "consider[ing] whether the information is necessary and whether it is available from any other source." 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2008). This inquiry is "highly case specific" and involves "an exercise of judicial discretion." *Id.* "The burden of proving that a subpoena is oppressive is on the party moving to quash." *Fleet Bus. Credit, LLC v. Solarcom, LLC*, No. Civ. AMD 05–901, 2005 WL 1025799, at *1 (D. Md. May 2, 2005) (internal quotation marks omitted).

Among other things, Allstate seeks production of Malik's "credentialing file" and "orientation folder" pertaining to the surgery center where [B.S.'s] procedure was performed. ECF

10

1 at 7. It claims these files are responsive to Requests 11 and 13; Malik said these files exist; Malik agreed to produce them; and he has filed to do so. ECF 1 at 7; ECF 1-10 at 2.

In Malik's email to Allstate's counsel on December 31, 2019, he did agree to produce the "credentialing file" and the "orientation folder." ECF 1-10 at 2. Because Allstate claims these documents have not yet been produced, ECF 1 at 7, and that contention is not disputed, I shall grant the Motion with respect to these documents.

Allstate also seeks emails between Malik/Delta and ISpine and its representatives. *Id.* In its view, these emails are responsive to Requests 1, 2, 3, and 7. ECF 1 at 7-8. However, Malik claimed that there were no communications responsive to these requests.

In an email to Malik on November 25, 2019 (ECF 1-7 at 2), counsel for Allstate said:

> Please note that records from email service providers confirm that you regularly received correspondence from ISpine's biller at both your malikmd.billing@gmail.com and summittam@gmail.com addresses. These email addresses were also used for dozens of communications with ISpine representatives who used the email addresses Jordan.ispine@gmail.com, maggie.ispine@gmail.com, office.ispine@gmail.com, and blake.ispine@gmail.com. All of these email communications that are responsive to Allstate's subpoenas must be produced, in addition to any other responsive materials in your possession, custody, or control.

Allstate has presented with its Motion evidence that, between January 2018 and April 2019, there were many emails exchanged between Malik and several email addresses associated with ISpine. ECF 1-8. But, in an email of December 31, 2019, Malik notes that IONM is "requested by the servicing provider/surgeon." ECF 1-10 at 2. Therefore, Malik contends that there was no communication between Delta and ISpine "relating to the medical necessity" of IONM. *Id.* He also asserts that there has never been a written agreement between Delta and ISpine. *Id.* And, he denies the existence of any communications between Delta and ISpine or Abraham "relating to billing practices" for IONM. *Id.* Further, he asserts that there have never been communications

11

between Delta and the medical director of Fountain View. *Id.* In other words, Malik asserts that the emails identified by Allstate are not responsive to Allstate's requests.

Allstate contends that any email between Malik and Barber, Pribil, billers, and other employees of ISpine "would necessarily be responsive to Allstate's subpoena in light of the nature of the relationship between Malik/Delta and ISpine." ECF 1 at 5. But nowhere in the Motion does Allstate specify precisely what that relationship is, beyond the fact that Malik worked with Pribil, and it provides no evidence for its assertion that any emails that exist between Malik and people associated with ISpine are responsive to the topics specified in Allstate's document requests. Malik has represented to Allstate that the communications were not on topics sought by the subpoenas. ECF 1-10 at 2.

Perhaps most significant, Allstate has not demonstrated the need for its sweeping inquiry in regard to its defense of the Michigan case, which concerns medical services for one patient who underwent a medical procedure in February 2019. The case involves a claim against Allstate for approximately $98,000 for those services. Without explanation, Allstate seeks documents beginning with January 2017 – two years before the disputed procedure. Indeed, the scope of the document requests seems unduly burdensome in light of the issues, including the sum at stake.[7] And, as to the emails, they may be available from other sources.

---

[7] A court may take judicial notice of matters of public record that constitute adjudicative facts. Fed. R. Evid. 201(b)(2); *Goldfarb v. Mayor and City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). "Adjudicative facts are simply the facts of the particular case." Fed. R. Evid. 201, Advisory Committee's note. *See* Fed. R. Evid. 201(b) (stating, in relevant part, that a "court may judicially notice a fact that is not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (noting that "[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records").

The Court takes judicial notice of the underlying proceedings in the Eastern District of Michigan. In particular, Allstate moved to compel discovery from ISpine, the plaintiff. ECF 22.

It is of no moment that Malik did not object to the subpoenas. He has represented to Allstate that he has no emails responsive to the request, and Allstate has provided no evidence that the emails included in ECF 1-8 pertain to the topics covered in their subpoenas. *See Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992) ("The fact that a party may disbelieve or disagree with a response to a discovery request. . . is not a recognized ground for compelling discovery, absent some indication beyond mere suspicion that the response is incomplete or incorrect."). Therefore, I shall deny the Motion insofar as the Motion concerns these emails.

"Although Rule 45(c)(2)(B)(i) authorizes the serving party to 'move the issuing court for an order compelling production or inspection,' there is no provision in Rule 45 for an award of expenses for bringing such a motion." *Bailey Indus., Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 672 (N.D. Fl. 2010). Allstate suggests that this Court award costs and fees through the exercise of its inherent contempt power. ECF 1 at 9. This I decline to do.

### III. Conclusion

For the aforementioned reasons, Allstate's Motion is granted in part and denied in part.

A separate Order follows.

Date: February 12, 2020

/s/
Ellen L. Hollander
United States District Judge

---

On October 4, 2019, U.S. Magistrate Judge Anthony Patti narrowed Allstate's requests, noting as follows, ECF 34 at 4:

> Defendant's requests are too broad in time. For purposes of Fed. R. Civ. P. 26(b)(1), the "relevant period" is January 1, 2019 (the month before [B.S.] presented for treatment) through April 26, 2019 (the date the complaint was filed in Wayne County Circuit Court.

Allstate did not disclose to this Court that the time frame of its document requests to the plaintiff in the Michigan litigation had been deemed too broad. Certainly, the same would be so for Malik and Delta, who are not even parties to the litigation.

13